Good morning, Your Honors. May it please the Court, my name is Tom Gannon. I'm here for the United States, not for the United States, but for Warden Paulson today. Perhaps the Court has the same sense of deja vu that I have. Mr. Sadie and I were reminiscing three years ago to the day, yesterday. I stood here and I think made some, I know, made some of the same arguments that I'm going to be making this morning about harmless error and remedy. The Courtroom, too. That's right. So anyway, I think the first thing I'd like to say is that it seems to me there has always been a sense of artificiality about this particular case. And I think it has proceeded under, I think, a premise that's not really supported in the record. And the premise is that if the Bureau of Prisons had waited back in October of 1997, you know, for a month until November the 15th, 1997, to make this interim rule effective, that the Petitioners would have jumped in and, you know, submitted comments to the Bureau on the rule. And I think the record shows that a comment period was open for more than three years until December of 2000, and no comments were submitted by these gentlemen. And so I think the idea that somehow they were, you know, eager to take part in this dialogue on, with the public, between the public and the Bureau of Prisons, on this regulation, I think is belied by what actually happened, the history of the case. Now, if I could... But why does that matter? Meaning, other people might have made comments during that period. Yes, they did. In fact, 150 people did make comments. But I think it goes to our point, is that there was notice and there was an opportunity to comment, and they didn't seize on that. But my question remains, why does it matter that they did not seize on it? That is to say, these are rules of general applicability. We don't, of course, and you don't either really expect prisoners to be active in sort of perusing Federal Register and so on. I mean, you are entitled to rely on a change in regulation only if you commented on it. I'm not sure I understand yet why it matters that they did not perceive an injury themselves. You know, that these, that most of their petitions didn't even include a claim under the Administrative Procedure Act, and they were filed, you know, months, years afterwards. And it only came along as an afterthought, and in particular, it was elaborated in 2001, after the case went against the Petitioners on the merits. That is, after the Supreme Court and this Court upheld the regulation in its substance. I think that's what I mean to say, is that how can they be prejudiced? It's hard for me to see if they weren't going to, and never commented, how they were prejudiced by the failure to wait a month before making the regulation effective. Anyway, that, you know, I sort of, that's a preview of what I was going to say, is that here you can't urge a waiver theory in this context, obviously. No, I'm not saying that they waived it, but I think it goes to the point that they didn't experience any kind of injury until, you know, the injury came later, you know, in the elaboration, that they weren't harmed at the time by the Bureau's decision to proceed to make the rule effective six days before it was actually promulgated. And that was really to conform it to its filing and also to a program statement that accompanied it. But again the Bureau has the obligation to abide by the, by the rules and regulation for the adoption of administrative orders, doesn't it? Yes, it certainly does. There's no question about that, Your Honor. That's what we're looking at, isn't it? Yes. And I think here Not so much from the prisoner aspect as we are from the Bureau point of view. Well, yeah. But also I think before, before you can hold the Bureau accountable, you have to determine whether these particular Petitioners were prejudiced. Can the Bureau come here and say we did everything by the book? You can't. Well, you know, I think you can't. You just can't. I think that the lower court has ruled that, and obviously you feel that. We have arguments which have been rejected by the Court. And right now we're arguing harmless error and remedy. And also, I mean, I guess there's an associated argument, which you don't have to reach, which is a constitutional argument. If they weren't prejudiced, then they don't have standing. Isn't the regulation adopted a nullity? No. I don't think so, Your Honor. And I think if you look at the cases We can have the statute. We can read the statute. Yes. But also you have to read Section 706 of Title V, okay, which is the rule of, you know, the prejudicial error should be observed. And the court is to make a judgment about prejudicial error or harmless error on the other side, you know, by looking at the whole record. That's what the statute says. And you look at the whole record here, and what you see is, as a practical matter, there was notice on the 15th, when the rule was promulgated. You know, and you look at a case like Riverbend Farms. It's Judge Kaczynski's opinion in Riverbend Farms. You know, the normal waiting period is 30 days at a minimum. If you waited for that, and you put the regulation in effect By normal, you mean the required, don't you? The legislative history of the statute says reasonable. It seems to me the agencies over the years have interpreted certainly 30 days, and I think that's what Judge Kaczynski was relying on. But the fact is, if they had waited 30 days, everything would be fine. And no one was affected. No one was affected until December the 9th. And that was three of these gentlemen. And the other 13, they were affected by the rule, you know, months, some of them years later. I think the last one was affected in October of 2000, almost three years after the promulgation of the rule. So, but that's the way you understand our argument, which is they had notice, they had an opportunity to comment, and therefore, when the rule was applied And your argument includes the argument that someone who's not affected by it until three years after the fact is precluded from relying on the invalidity of the rule because three years before, he didn't comment. I think I've understood your position. No, and saying that, I'm saying he had an opportunity to comment. Of course he had an opportunity to comment, I understand that. Even though the effect of the rule would not actually bite him for another three years, you're saying his failure to comment at that period three years before the rule would have any impact on him. None of that means that he cannot now take advantage of the fact that it's invalid. Is that right? I'm saying he was not harmed by the decision to make the rule effective immediately. That's all I'm saying. I'm not saying that whether or not, although I would say I don't understand your notion of harm. That is to say, he either benefits or does not benefit, depending on whether the rule is enforced against him. And if the rules enforced against him, he's in the worst position. You're saying that's not harm, but it's an odd definition of harm. The harm, as I understand it, is that he didn't have advanced notice of the statute and an advanced opportunity to deny that justice. I think that's the illegality. He didn't have advanced notice of the rule, and he didn't have an advanced opportunity to comment. But as a matter of fact, there was actual notice in the Federal Register, and there was an expanded opportunity to comment for everybody, everyone in this petitioner class. And let me, if I could. But your argument seems to be standing, which you say because he didn't suffer harm, but we know he did suffer harm eventually. So to get back to Judge Fletcher's question, you're saying that doesn't count in terms of constitutional standing. That's right. Why? Because his harm was procedural and not substantive. I mean, the substantive harm was the denial of eligibility for the early release. Sure. OK. But here, what was the harm? The harm was he didn't have advanced notice. And I just would ask the Court to do this. If you look at the cases we have cited in our brief on harmless error, Rearbend Farms, State v. Rebond. Well, that's different from your standing argument. Well, it's not because if there's harmless error, then there's no standing. That is, if they don't have an injury in fact, then they don't have standing. And if they don't, if they're not prejudiced, then the error is harmless. I think it's a different approach, and obviously I think the Court would prefer, if I understand its protocols, to decide the case on a statutory ground as reaching out to a constitutional ground, but the same basic facts support both the statutory and the constitutional argument. And I was going to say, look at those cases, Riverbend Farms, Sagebrush Rebellion, Idaho Farm Bureau, County of Del Norte, and in particular, Riverbend Farms, I think, because Judge Kuczynski provided, you know, extended discussion of harmless error and also the requirements of the Administrative Procedure Act. Look at those facts. Lay them against our facts. That is what happened here, notice and an opportunity to comment. And the end result in Riverbend Farms was a finding of harmless error. And I think here the error was harmless for the same reasons, because there was actual notice and there was an opportunity to comment. And I think another thing is, one other important case, obviously, in this area is Bushman. But if you look at Bushman as a whole, the Court went on after saying, you know, if the agency doesn't observe the Administrative Procedure Act, the rule is invalid. But then it went on to consider Section 706 of Title V, the harmless error statute. And it seems to me that Bushman as a whole stands for, yeah, the rule is invalid if someone who, you know, claims to be affected was, in fact, affected prejudicially. And these guys, with all respect, were not hurt because, you know, because the application of the rule to them came after a significant amount of time had passed where the purpose of the rule, that is, of the Section 553, was actually fulfilled, was met because there was notice before they were affected by it. And I would also say, if I could go on to the remedy portion of this, I'd like to reserve a couple minutes if I could, that if you look at the cases, and we have cited them in the brief, what's the remedy for a procedural error? I remember this specifically from three years ago. I think I was addressed in conversation with you, Judge Fletcher, and I remember saying, what's the remedy for not waiting 30 days? And I think that's still a good question to ask. What's the remedy for not waiting 30 days? And it seems to me, and we've obviously explained this in much greater detail in our brief, that the remedy is not substantive. It's not eligibility for early release. It's a reconstruction of their procedural rights. Now, I understand that's not going to get them very far, given the fact that a final rule has been adopted, which is identical to the interim rule, but that's what they're entitled to. I mean, this Court in Bowen and the Supreme Court in Lopez has said the Bureau had discretion to do what it did, so they have no entitlement to get out or to get a reduction. And so, you know, I would just, you know, I think that's important to keep in mind, that any remedy should be procedural. And if you look at Bushman, and you look at the remedy section, which is really on page 358 of volume 676 of Fed Second, you find that the remedy was restricted, you know, to the period that ended with the adoption of a final rule. So any claim of invalidity, any right to a remedy, was extinguished. And that's Bushman. That's the biggest case they have, because that's where the language comes from. You know, and that was about the denial of Social Security benefits. And it was, and the calculation stopped when the final rule went into effect. And it seems to me that's the kind of remedy, you know, it should be limited in time, and it should be a procedural remedy. And we have, you know, multiple cases that say that. I have about 2 minutes and 25 seconds. May I get you back? Thank you. Mr. Sating. May it please the Court. This case involves black letter administrative law. Under section 553B, there has to be prior notice and an opportunity to comment before a rule goes into effect. If that rule is not complied with, the resulting rule is invalid, it's a nullity, and is of no effect to people who are adversely affected by that. The policies behind the requirement have been articulated by this court as assuring that there's an opportunity that when a federal bureaucracy acts, there's a democratizing influence of allowing the public to comment, to provide input, to perhaps influence the ultimate rule before it is put into effect. This court has also noted that when there is a violation of the notice and comment provisions, that it not only invalidates the rule, but it invalidates the repeal of the prior regulation. In this case, when the new rule was invalid because of the violation of the Administrative Procedure Act, the remaining regulation was the one that this court in Downey and Davis said, each of these clients is entitled to eligibility for a one-year reduction. And that one-year reduction, that liberty, freedom, is what we're saying is the harm if we were not to have a remedy here. There's certainly standing under that basis. There's certainly a real harm that occurred. Well, what's the interplay then between the old regulation and the statute? The old regulation construed the statutory term nonviolent offense to adopt 924C as the definition of nonviolent. In Downey and Davis, the court looked at the program statement that broadened the regulation and said, no, that's inconsistent with the construction of the statute and the regulation. And therefore, these folks who had the gun bump or 922G conviction were categorically eligible. So the prior regulation was adopted after the statute? Yes. As now written? In 1995, I believe, was the original statute, the original regulation. The same rule that we're discussing of this black letter, administrative law, applies to Social Security recipients, folks who are entitled to benefits as PAPAGO, members of the PAPAGO tribe in Morton v. Ruiz, and basically for any large corporation that may be affected by federal bureaucracy's actions. A rule changing that or a different one in this situation would have profound effects and negative effects on the development of administrative law and is especially unfair given the prisoner's extreme interest in the opportunity for a year sentence reduction. If we accept the argument that the interim regulation was invalid and we accept the argument that these litigants are invalid as to them, then the first time you get a valid regulation that would not allow them to have this time is when the permanent regulation is adopted. How does the permanent regulation apply to them, if at all? Not at all. The final rule was put into effect on December 20, 2000. In Bushman v. Schweiger, the court stated that it was invalid until the final rule issued. Given the need to reconstruct the procedural rights, I can foresee a potential argument that that final rule should be invalid because what they should have done to correct the situation is to withdraw, allow opportunity for comment. But that's not this case. Each one of these people in their petitions stated the date that their eligibility was determined. Each of those eligibility determinations was prior to December 20, 2000, so each of them were declared invalid as a consequence of the interim rule. How do you respond to the Riverbend argument? I embrace Riverbend. The case was cited by Judge Haggerty in his opinion. We cited it to him, and because if we're looking at the harmful error, the – is that what the court is interested in? Harmlessness. There are two aspects to harmlessness, substantive harmlessness and procedural harmlessness. The substantive part of it requires a showing that the rule would have been adopted in any event. That's one of the reasons I think the judge made such a point of I gave them the opportunity, I asked what evidence you want to put on, I received no new evidence on harmlessness. So there was no evidence of substantive harmlessness for all we – he knows from the record. What I think is a very bad policy, there may have been a response based on comment. So there's no showing of substantive – but the real essence here is the procedural harmlessness, the part that was not mentioned and deleted from the citations in the district court. The procedural harmlessness comes when the person had actual notice before the regulation went into effect, and despite not getting the formal notice and comment through the Federal Register, actually had the opportunity to present information based on actual knowledge. That's the place where there is an exception and where the court in Sagebrush, for example, found that it was harmless. This is completely outside of that. There's no showing that there was procedural harmlessness. In fact, this is the essence of the type of stealth rulemaking that the APA was designed to prevent, and this is a classic example where the APA should be fully enforced. And the BOP knew from practically day one, because if you – our timeline going back to the history of this litigation, or at least the recent history of the litigation, goes back to January 1998, when we filed the first Bowen petitions that were upheld – affirmed ultimately by this court, in which the district court opinion reflects that there were alternative remedies requested. The same thing in the initial cases with Gavis. APA was briefed in all the petitions. The initial petitions raised the APA, and every memorandum raised the APA issue. Every one of these individuals told the Bureau of Prisons in unmistakable terms that we thought that we were damaged by the APA violation and that we were prejudiced by it in a way that should have a remedy. The jurisdictional questions, I'm not sure if the court is concerned with. I believe that the court below completely addressed them with the Supreme Court controlling cases of Carapas. If you file as a prisoner in the district where you're serving time against the custodian, that jurisdiction attaches, that jurisdiction is not affected by the fact that you go to Oregon, Hawaii, or Tierra del Fuego. It's still a matter that the initial jurisdiction continues, and these people are affected as held in Johnson and Gunderson because they're eligible for petitioning the court for either a reduction of supervised release term, modification of supervised release term, or other types of equitable remedies. It doesn't have to be the exact same remedy as when you filed under Federal Rule, the Civil Procedure 54C. Of course, with the passing of time, remedies are going to change. The remedies changed here, and he's entitled each of these persons was in a situation where they should be. There's jurisdiction, there's standing, and there is a remediable injury. Unless the court has other questions, I'll just finish with the statement in Bushman, which was that the procedural safeguards is just as important for Social Security recipients as they are for powerful corporations. And I'll just add that it's just as important, and maybe more so, when we're talking about a year of potential freedom and human liberty for these prisoners. Thank you. Thank you, counsel. Vaughn? Just a few minutes. I see. I think if you accept their interpretation, you've rendered Rule 706, excuse me, Section 706 a nullity. And at least five cases in this circuit, and those are the ones we've cited in our brief, have held that it's not a nullity. In fact, Judge Kuczynski says we can't just throw out the rule because, you know, the agency erred in its promulgation. We have to look to see if somebody was harmed. And that's what I think has to happen here. And that's why we recommend look at Riverbend and look at the facts in our case and lay them side by side and see if this isn't much more like Riverbend than Bushman, where you had, you know, a promulgation of a rule in January of 74, followed up by another rule in October of 75, which related back to December of 74, without anybody having a chance to comment. Judge Reinhart in the Sagebrush Rebellion case said, you know, he disposed of Bushman in a sentence because it doesn't control, because there was just no notice. There was no opportunity to comment. This is quite different for these people in their factual situations when the rule was applied to them. The final rule, again, I think it's important to read the whole case, the whole case in Bushman, the whole case in Riverbend. Riverbend has these statements about the Administrative Procedure Act. We agree with those statements. The end result is a finding of harmless error because of the facts of the case. If you look at Bushman, again, you have the statements which Mr. Sady relies so heavily on, and we have no quarrel with those, but the end result is a tailored remedy, which extinguishes the remedy at the time the final rule goes into effect. That's the whole case in Bushman. On the matter of evidence of harmlessness, you know, that has been in the record from the very beginning, and we directed the district court's attention to that evidence of harmlessness. That is the timing. I mean, in this area, as in so many other areas of human endeavor, timing is everything, and it's the timing of the promulgation, it's the timing of the end of a reasonable period to comment, and the timing of the effect of the rule on this particular class of petitioners that's so important in determining whether or not the error was harmless or prejudicial. And we believe it was, in fact, harmless. Let me ask you this. Sure. You're arguing that because they did not, in fact, comment during the period that was open to them for the interim rule, they should not be able to take advantage of the invalidity of the rule. No, I think no, I don't think that is precisely our argument. Our precisely argument is that they did have an opportunity to comment. Whether or not they took advantage of that opportunity, that is irrelevant, it seems to me. That opportunity is a constructive notice. It's not an actual notice, right? Well, it is. You know, I think what's contemplated is Federal Register notice, which is. The Bureau of Prisons knew they had these prisoners. They knew that the computation of time was of interest to all prisoners, but they didn't give every prisoner a notice that the rules on time release are going to change. No, I think they felt that the publication in the Federal Register was notice. It's basically a constructive notice, and you place a lot of burden on the prisoner to say they had notice. Yes, they had constructive notice. But. Actual notice. There's no showing in this record that anybody had actual notice. Well, but I don't know what the Bureau can do other than to publish. I mean, I think it satisfies the statute's requirements to put it. They lock them up and they compute their time and they tell them what time they have. I take it that they can communicate with the prisoners that are under their control. Yeah, well, I think, of course, is that they didn't necessarily, if I might answer this question, they didn't necessarily know who was going to be affected. It didn't happen until, you know, it came time to admit them, or at least to say they were eligible to participate in the drug treatment program, and then whether or not at the end of a successful drug treatment program, they would be entitled to a year off. But that, I'm sure the Bureau could determine in advance who was going to be affected in that way, since these admissions and these determinations were made as we have said so often after a reasonable period had expired. You give everybody notice. That's not easy. Well, I think the statute, and if you look at, again, Riverbend Farms, I think, you know, the statute contemplates Federal Register notice is sufficient. Yeah, although your argument that the Bureau didn't know who was going to be affected cuts both ways. The prisoners may not have known who was going to be affected. And, therefore, why should they, even if they had known, comment if they didn't know they were going to be affected? Well, but I think you can't absolutely anticipate every contingency down the road. But what I think the claim is, is that they were harmed, you know, by not knowing in advance. But we contend they did know in advance of when it hit them. And that's, I think, because they knew that. They knew, but you didn't. I think we both didn't necessarily know. But the fact is that it was out there. And the fact that it was out there, that's decisive. Thank you very much. Thank you, counsel. The case, Mr. Stewart, will be submitted. We'll proceed to the next case on the oral argument calendar, which is Mujahid v. Daniels. May it please the Court. There are three basic reasons why Pacheco Camacho does not control this case. The first is that intervening Supreme Court authority on statutory construction undermines the validity of the Pacheco Camacho paradigm of going to deference before the rule of lenity. The second is that because this is a multi-judicial case,
judges: Beezer, Thomas, W. Fletcher